UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

LORETTA SCHNEIDER,                          CIVIL NO.  06-2925 (MJD/JSM)

       Plaintiff,

v.                                                    REPORT AND RECOMMENDATION

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

The above matter is before the undersigned United States Magistrate Judge on plaintiff's Motion for Summary Judgment [Docket No. 12] and defendant's Motion for Summary Judgment [Docket No. 15].  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c).

For the reasons discussed below, it is recommended that the plaintiff's Motion for Summary Judgment be **DENIED** and that the defendant's Motion for Summary Judgment be **GRANTED**.

## I.    FACTUAL BACKGROUND

Plaintiff's application for disability insurance benefits and supplemental income benefits under Title II of the Social Security Act was initially filed on September 17, 2003.  Tr. 59.  Plaintiff claims she became disabled as of January 1, 1971, due to back problems, cysts, arthritis, and edema.  Tr. 59, 73.

The Social Security Administration ("SSA") denied plaintiff's application initially and upon reconsideration.  Tr. 35-37, 40-43.  Plaintiff filed a request for a hearing by an Administrative Law Judge.  Tr. 44.  Plaintiff, who was represented by legal counsel,

received a hearing before the Administrative Law Judge Paul D. Tierney ("ALJ") on June 28, 2005.  Tr. 18.  Testimony was taken at the hearing from plaintiff.  Tr. 18, 373. In addition, evidence was presented by neutral vocational expert ("VE") Barbara Wilson-Jones.  Id.  On November 16, 2005, the ALJ issued a decision to deny plaintiff benefits. Tr. 15, 18-26.  Plaintiff filed a Request for Review of the ALJ's decision with the Appeals Council.  Tr. 12-13.  The Appeals Council denied plaintiff's request for review and upheld the ALJ's decision denying benefits to plaintiff, making the ALJ's findings the final decision of defendant.  Tr. 7-9.  See 42 U.S.C. § 405(g).

Plaintiff sought review of the ALJ's decision by filing the instant action with this Court pursuant to 42 U.S.C. § 405(g).  The matter is now before the Court on plaintiff's Motion for Summary Judgment [Docket No. 12] and defendant's Motion for Summary Judgment [Docket No. 15].

## II.   PROCESS FOR REVIEW

Congress prescribed the standards by which Social Security disability benefits may be awarded:  "[t]he Social Security program provides benefits to people who are aged, blind, or who suffer from a physical or mental disability."  42 U.S.C. § 1382(a); Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992).   The Social Security Administration shall find a person disabled if the claimant "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."  42 U.S.C. § 1382c(a)(3)(A).  The claimant's impairments must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."   42 U.S.C.

§ 1382c(a)(3)(B).  The impairment must last for a continuous period of at least twelve months or be expected to result in death.   42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§ 404.1509, 416.909.

### A.      Administrative Law Judge Hearing's Five-Step Analysis

If a claimant's initial application for benefits is denied, he or she may request reconsideration of the decision.  20 C.F.R. §§ 404.909(a)(1), 416.1409(a).  A claimant who is dissatisfied with the reconsidered decision may obtain administrative review by an ALJ.  42 U.S.C. §§ 405(b)(1), 1383(c)(1); 20 C.F.R. §§ 404.929., 416.1429, 422.201 et seq.  To determine the existence and extent of a claimant's disability, the ALJ must follow a five-step sequential analysis, requiring the ALJ to make a series of factual findings regarding the claimant's work history, impairment, residual functional capacity, past work, age, education, and work experience.  See 20 C.F.R. §§ 404.1520, 416.920; see also Locher, 968 F.2d at 727.  The Eighth Circuit described this five-step process in Morse v. Shalala, 16 F.3d 865, 871 (8th Cir. 1994), vacated on other grounds, as follows:

> The first step asks if the claimant is currently engaged in substantial gainful employment.  If so, the claimant is not disabled.  If not, the second step inquires if the claimant has an impairment or combination of impairments that significantly limits the ability to do basic work activities.  If not, the claimant is not disabled.  If so, the third step is whether the impairments meet or equal a listed impairment; if they do, the claimant is disabled.  The fourth step asks if the claimant's impairments prevent her from doing past relevant work.  If the claimant can perform past relevant work, she is not disabled.  The fifth step involves the question of whether the claimant's impairments prevent her from doing other work.  If so, the claimant is disabled.

(citing 20 C.F.R. § 416.920).

**B.     Appeals Council Review**

If a claimant is dissatisfied with the ALJ's decision, he or she may request review by the Appeals Council, though review is not automatic.  20 C.F.R. §§ 404.967-404.982, 416.1467-416.1482.  The decision of the Appeals Council, or of the ALJ if the request for review is denied, is final and binding upon a claimant unless the matter is appealed to Federal District Court within 60 days of notice of the Appeals Council's action. 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. §§ 404.981, 416.1481.

**C.     Judicial Review**

Judicial review of the ALJ's decision generally proceeds by considering the decision of the ALJ at each of the five steps.  The Court is required to review the administrative record as a whole and consider:

1.     The credibility findings made by the ALJ.

2.     The plaintiff's vocational factors.

3.     The medical evidence from treating and consulting physicians.

4.     The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5.     Any corroboration by third parties of plaintiff's impairments.

6.     The testimony of vocational experts, when required, which is based upon a proper hypothetical question which sets forth plaintiff's impairments.

Cruse v. Bowen, 867 F.2d 1183, 1185 (8th Cir. 1989) (citing Brand v. Secretary of HEW, 623 F.2d 523, 527 (8th Cir. 1980)).

The review by this Court is limited to a determination of whether the decision of the ALJ is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); Johnson v. Apfel, 210 F.3d 870, 874 (8th Cir. 2000); Clark v. Chater, 75 F.3d 414, 416 (8th Cir. 1996);  Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992).  "We

4

may reverse and remand findings of the Commissioner only when such findings are not supported by substantial evidence on the record as a whole." Buckner v. Apfel, 213 F.3d 1006, 1012 (8th Cir. 2000).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison v. NLRB, 305 U.S. 197, 229 (1938)); see also Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994). "'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.'" Buckner, 213 F.3d at 1012 (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)); see also Cox v. Apfel, 160 F.3d 1203, 1206-07 (8th Cir. 1998) (same).

In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ. Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993). "It is not my job to decide the facts anew, reweigh the evidence, or substitute my judgment for that of the Commissioner. In this regard, I 'must consider both evidence that supports and evidence that detracts from the Secretary's decision, but may not reverse merely because substantial evidence exists for the opposite decision.'" Callison v. Callahan, 985 F. Supp. 1182, 1186 (D. Neb. 1997) (citations omitted).

The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence. Culbertson, 30 F.3d at 939. The Court should not reverse the Commissioner's finding merely because evidence may exist to support the opposite conclusion. INS v. Elias-Zacarias, 502 U.S. 478, 481 n. 1 (1992); Buckner, 213 F.3d at

1011; Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994).  Instead, the Court must consider "the weight of the evidence in the record and apply a balancing test to evidence which is contradictory."  Gavin v. Apfel, 811 F.2d 1195, 1199 (8th Cir. 1987).

A claimant bears the burden of proving his or her entitlement to disability insurance benefits under the Social Security Act.  See 20 C.F.R. §§ 404.1512(a), 416.912(a); Thomas v. Sullivan, 928 F.2d 255, 260 (8th Cir. 1991).  Once a claimant has demonstrated that he or she cannot perform prior work due to a disability, the burden of proof shifts to the Commissioner to show that the claimant can engage in some other substantial, gainful activity.  Martonik v. Heckler, 773 F.2d 236, 238 (8th Cir. 1985).

## III.   DECISION UNDER REVIEW

### A.   Vocational Background

Plaintiff was 35 years old at the time of the ALJ's decision.  Tr. 26, 59.  She has graduated from high school. Tr. 379.  Plaintiff's past employment positions included: microfiche operator, housekeeper, assembler, packager, order filler, and factory inspector.  Tr. 74.  Plaintiff's last job involved inspection of parts at a factory, which lasted for only one day in 2003.  Id.

### B.   ALJ's Application of the Five-Step Process

The ALJ concluded that plaintiff was not entitled to disability insurance benefits under §§ 216(i) and 223 of the Social Security Act.  Tr. 26.  The ALJ made the following determinations under the five-step procedure.  At the first step, the ALJ concluded that plaintiff's earnings would not preclude the payment of disability benefits and, therefore, plaintiff's application for benefits could not be denied because of work experience.  Tr. 20.  At the second step, the ALJ found that plaintiff had impairments consisting of

degenerative disc disease of the lumbar and thoracic spine, chronic scarring from old sebaceous cyst activity in the left axilla[1], a history of asthma, and arthritis.  Tr. 20-21. However, the ALJ only found that plaintiff was severely impaired by degenerative disc disease of the lumbar and thoracic spine, and by chronic scarring from old sebaceous cyst activity in the left axilla.  Id.  At the third step, the ALJ determined that the record did not establish that plaintiff was subject to any impairment or combination of impairments that meet or equal the requirements of the Listing of Impairments in Appendix 1, Subpart P, Regulation No. 4.  Tr. 21.  At the fourth step, the ALJ found that plaintiff had the residual functional capacity ("RFC") to perform work at light level, which included carrying no more than 20 pounds occasionally and no more than 10 pounds frequently light; with standing and walking for up to 6 hours out of an 8 hour day; and with only occasional bending, twisting, and stooping.  Id.  Given this RFC, the ALJ determined that plaintiff was capable of performing her past relevant work as a hand packager, and assembler.[2]  Tr. 25.

---

[1]     Axillae: "The space below the shoulder joint, bounded by the pectoralis major anteriorly, the latissimus dorsi posteriorly, the serratus anterior medially, and the humerus laterally; it has a superior opening between the clavicle, scapula, and first rib (cervicoaxillary canal), and an inferior opening or floor covered by the axillary fascia and skin; it contains the axillary artery and vein, the infraclavicular part of the brachial plexus, axillary lymph nodes and vessels, and areolar tissue. Syn: axillary cavity, fossa axillaris, axillary space, axil, armpit, axillary fossa, maschale." STEDMAN'S MEDICAL DICTIONARY (2000).

[2]     Since the ALJ denied plaintiff's application for benefits at the fourth step, the ALJ did not render a conclusion as to the fifth step – whether plaintiff has the RFC to perform a significant number of jobs existing in the national economy.  Ordonez v. Massanari, 2001 U.S. Dist. LEXIS 24634, *18 (N.D. Iowa 2001); see also e.g., Moad v. Massanari, 260 F.3d 887, 891 (8th Cir. 2001) (concluding that a claimant is not disabled if it is found that he or she can perform the functions of a past relevant job).

IV.    **ISSUES UNDER REVIEW**

First, plaintiff argued that the ALJ erred because he only considered her medical reports and did not consider all of the factors in assessing plaintiff's subjective complaints, as required under Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984) (vacated on other grounds by Bowen v. Polaski, 476 U.S. 1167 (1986)).  See Plaintiff's Memorandum in Support for Summary Judgment ("Pl.'s Mem.") at pp. 9-11.  Second, plaintiff asserted that the ALJ's determination that plaintiff's severe impairments did not meet or medically equal the Listing of Impairments contained in Appendix 1, Subpart P, Regulation No. 4, was improper.  Tr. 21.  Specifically, plaintiff maintained that the ALJ failed to properly develop the record regarding whether plaintiff met the listing requirements for hidradenitis suppurativa[3] because the ALJ did not consult with a medical expert when additional evidence regarding hidradenitis suppurativa was submitted after the date the state agency physicians rendered their opinions on plaintiffs' condition.  See Pl.'s Mem. at pp. 11-15.  Finally, plaintiff argued that the ALJ erred because he failed to establish whether the testimony by the VE was consistent with the Dictionary of Occupational Titles ("DOT") and its companion publication, the Selected Characteristics of Occupations ("SCO").  Id. at pp. 16-17.

Plaintiff asserts that as result of these errors, the ALJ's decision is not supported by substantial evidence in the record.  Id. at p. 17.

---

[3]    Hidradenitis suppurativa: "chronic suppurative folliculitis of apocrine sweat-gland–bearing skin of the perianal, axillary, and genital areas or under the breasts, developing after puberty and producing abscesses or sinuses with scarring." STEDMAN'S MEDICAL DICTIONARY (2000).

**V.     PLAINTIFF'S SUBJECTIVE TESTIMONY**

Failure to give some consideration to a claimant's subjective complaints is reversible error.   Brand v. Secretary of the Dept. of Health, Educ. and Welfare, 623 F.2d 523, 525 (8th Cir. 1980).  "[A] headache, back ache, or sprain may constitute a disabling impairment even though it may not be corroborated by an x-ray or some other objective finding."  Id.  An ALJ must consider a claimant's subjective complaints, regardless of whether they are corroborated by objective medical findings.  Id.; see also Cline v. Sullivan, 939 F.2d 560, 566 (8th Cir. 1991).  On the other hand, "we will not substitute our opinions for that of the ALJ, who is in a better position to assess a claimant's credibility."  Id. (citing Woolf, 3 F.3d at 1213).

In considering a claimant's subjective complaints of disability, the ALJ must assess the claimant's credibility, applying the factors set forth in  Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984) (vacated on other grounds by  Bowen v. Polaski, 476 U.S. 1167 (1986)).  The Polaski factors require the ALJ to give full consideration to all the evidence presented relating to a claimant's subjective complaints, including prior work record, and observations of third parties and treating and examining physicians relating to such matters as:

1.     the claimant's daily activities;

2.     the duration, frequency, and intensity of the pain;

3.     precipitating and aggravating factors;

4.     dosage, effectiveness, and side effects of medication;  and

5.     functional restrictions.

Id.; see also Cox v. Apfel, 160 F.3d 1203, 1207 (8th Cir. 1998) (same);  Baumgarten v. Chater, 75 F.3d 366, 368 (8th Cir. 1996) (same);  Johnson v. Chater, 87 F.3d 1015,

1017 (8th Cir. 1996) (same); Cline, 939 F.2d at 565 (same); Callison, 985 F. Supp. 1182, 1186 (D. Neb. 1997) (same).   "Other relevant factors include the claimant's relevant work history and the absence of objective medical evidence to support the complaints." Cox, 160 F.3d at 1207.

"An ALJ may discount a claimant's subjective complaints of pain only if there are inconsistencies in the record as a whole."   Johnson, 87 F.3d at 1017 (citing Smith v. Shalala, 987 F.2d 1371, 1374 (8th Cir. 1993)).   "The ALJ may discount a claimant's allegations of pain when he explicitly finds them inconsistent with daily activities, lack of treatment, demeanor, and objective medical evidence."   Jones v. Chater, 86 F.3d 823, 826 (8th Cir. 1996); see also Cox, 160 F.3d at 207.   The ALJ may not disregard a claimant's subjective complaints solely because he or she believes the objective medical evidence does not support them.   Griffon v. Bowen, 856 F.2d 1150, 1154 (8th Cir. 1988).

If the ALJ rejects a claimant's complaint of pain, "the ALJ must make an express credibility determination detailing his reasons for discrediting the testimony."   Cline 939 F.2d at 565.   "It is not enough that inconsistencies may be said to exist, the ALJ must set forth the inconsistencies in the evidence presented and discuss the factors set forth in Polaski when making credibility determinations."   Id.

In this case, plaintiff argued that the ALJ and the Appeals Council erred by failing to afford credibility to plaintiff's subjective complaints of pain.   In particular, plaintiff asserted that the ALJ failed to address all of the Polaski factors and failed to set forth in his decision the inconsistencies in the record.   See Pl.'s Mem. at p. 11.   During her testimony in front of the ALJ, plaintiff stated that she suffered from lower back pain with pain shooting into the right leg, painful cysts, edema in her legs and hands, painful bone

spurs in both of her heels and her right ankle that affected her walking, and arthritis pain in her back and hands.   Tr. 380, 383-387.   However, plaintiff did not identify the subjective complaints the ALJ failed to properly consider.

This Court finds that contrary to plaintiff's assertion, the ALJ set forth the inconsistencies in the evidence presented and discussed the factors set forth in Polaski with regards to plaintiff's subjective complaints of pain.   See Jones v. Chater, 86 F.3d 823, 826 (8th Cir. 1996) ("The ALJ may discount a claimant's allegations of pain when he explicitly finds them inconsistent with daily activities, lack of treatment, demeanor, and objective medical evidence.").   Specifically, the ALJ found that plaintiff's complaints were inconsistent with the medical evidence, her treatment, medications taken, her daily activities, and work history.   Tr. 21-25.   The Court notes that the ALJ did not explicitly and discretely analyze plaintiff's credibility in the format set forth under Polaski.   Instead, the ALJ interwove the analysis of plaintiff's subjective complaints into his discussion. While it might have been preferable that the ALJ specifically addressed each of the Polaski factors separately, the mere absence of such discussion does not render the ALJ's determination invalid.   See Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000) (finding that although the ALJ had not explicitly articulated his credibility determination, he did so implicitly by evaluating the claimant's testimony under the Polaski factors and by identifying inconsistencies between the claimant's statements and evidence in the record); see also Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000) (holding that ALJ was not required to methodically discuss each Polaski consideration, so long as he acknowledged and examined those considerations).

Further, this Court concludes that the ALJ's credibility determination is supported by substantial evidence in the record.

A.      **Objective Medical Evidence**

There is no objective medical evidence in the record that would support a finding that plaintiff is presently suffering from a level of pain that prevented her from sustaining gainful employment.

1.      Back-Related Pain

On February 11, 2002, plaintiff complained of thoracic pain.  Tr. 210.  Tr. However, an examination of her musculoskeletal system revealed that she was well developed, there were no areas of crepitus, nodules or swelling, her strength was 5/5, she had a normal gait, straight leg raises were negative, and that she had a full range of motion.  Tr. 211.  She was given a prescription refill of Soma[4] for her claims of chronic pain.  Id.  A March 13, 2003 examination of plaintiff's musculoskeletal system again revealed that there were no areas of crepitus, nodules or swelling, her strength was 5/5, and she had a normal gait.  Tr. 204.  On June 24, 2003, plaintiff reported that she was pain free, but that she sometimes had flares of her chronic pain.  Tr. 200.  Moreover, plaintiff did not appear to be in any acute distress.  Id.  While plaintiff reported and was diagnosed with back pain in August through November of 2003, there is no objective medical evidence to support that it was of a level that prevented her from sustaining employment.  Tr. 215-16, 222-23, 224-25.  To the contrary, an MRI performed on August 28, 2003 showed only small right disk herniation, with no compression of the right S1 nerve root; mild degenerative disk changes L4-5 and L5-S1, with no central canal stenosis or foraminal impingement; and mild degenerative end-plate changes and minimal bulges between T9 and T12, with no central canal stenosis or foraminal impingement.  Tr. 228, 313.  Further, although plaintiff claims of back plain that radiated

---

[4]      Soma (Carisoprodol): "Skeletal Muscle Relaxant."  THE PILL BOOK (2002).

down into her right leg, on September 19, 2003, plaintiff told her doctor that while "in the beginning" she had right lower back pain that radiated all along her right leg, she now only had pain from her knee to her ankle.  Tr. 219.

Further, in December of 2003, plaintiff communicated to a nurse at Hennepin County Medical Center ("HCMC") that she continued to have "some pain in her lower back but denie[d] any radiation down into her legs."  Tr. 295.  At that time her strength in the musculoskeletal region was rated 5/5 and she exhibited a normal gait.  Id.  In January of 2004, plaintiff received a refill of Vicodin and Soma for her back pain, despite the concern by a nurse that she had been just given a prescription refill and warned of the medication's additive properties.  Tr. 294. The next mention of back pain is an April 22, 2004 medical note indicating that plaintiff was seen, in part, for lower back pain.  Tr. 249.  Upon examination of plaintiff, the medical doctor only noted "some muscle tension in the paraspinal muscles of her low [sic] back."  Id.  She was given a refill for Soma and Vicodin.  Id.  On May 22, 2004, plaintiff reported lower back pain with radiating pain into her leg.  Tr. 247.  The doctor only noted spinal tenderness in making the assessment that plaintiff was suffering from lower back pain with radiation into the right leg.  Tr. 248. There are no other medical records after May 2004 indicating that plaintiff had seen a medical doctor for back pain.[5]

On July 29, 2005, plaintiff underwent a consultative examination by Dr. Azam Asari.  In his consultative report, he stated that plaintiff's abilities were limited in part to a

---

[5]     This Court notes that the records indicate that plaintiff went to a chiropractic between 2002-2005, however, there is nothing in the record that this treatment by the chiropractor was supported by objective findings that would support plaintiff's subjective complaints of pain.  Tr. 258-279, 319-26; see generally, Hartranft v. Apfel, 181 F.3d 358, 361 (3rd Cir. 1999) (finding that a chiropractor's opinion is "not 'an acceptable medical source' entitled to controlling weight.'") (quoting 20 C.F.R. § 416.913).

herniated disk L5-31 with radiculitis.   Tr. 350.   However, his examination of plaintiff showed that her gait was normal, there was no tenderness at her lumrosacral spine, and straight leg rising was negative.   Tr. 350.   In addition, he found that plaintiff's flexion of her back was 80 degree, extension was to 30 degrees, and lateral rotation on both sides was 25 degrees.

In sum, the ALJ concluded that plaintiff was severely impaired by her back condition.  Tr. 21.  This Court finds that while there is evidence in the record that plaintiff alleged she was experiencing back pain, there is an absence in the record of objective finds to support the severity of pain claimed by plaintiff.   See Curran-Kicksey v. Barnhart, 315 F.3d 964, 968 (8th Cir. 2003) ("The lack of supporting evidence may be used as 'one factor to be considered in evaluating the credibility of testimony and complaints.'") (quoting Polaski, 739 F.2d at 1322).

2.   Cyst Pain

The first mention in the record of anything relating to pain arising out of cyst activity was on March 29, 1989, when plaintiff presented to HCMC with a painful cyst under her right arm.  Tr. 197.  There is no indication in the records that the cyst impaired plaintiff's range of movement.   While there are other records that discuss plaintiff's issues with cysts, the only other mention of pain caused by cyst activity was a September 18, 2003 medical entry by a doctor that included observations of old scarring from old sebaceous cyst activity in her left axillae and that plaintiff insisted on holding her right arm at her side due to a sebaceous cyst infection.  Tr. 220.  As such, the records only contain two instances of plaintiff complaining of pain arising from cyst activity between 1989 and 2005.

3.    Edema

There is also an absence in the record of significant reports by plaintiff of edema. The first mention of edema is November 4, 2001, when plaintiff complained of intermittent edema.  Tr. 189.  Despite no finding of edema upon plaintiff's examination, she was diagnosed with minimal edema on this date.  Id.  On January 8, 2002, plaintiff stated to a physician that she had intermittent edema, however, no such diagnosis was made for plaintiff on that date.  Tr. 180-81.  To the contrary, the examining doctor noted no swelling, redness or deformity of the ankle.  Tr. 181.  Further, plaintiff refused to use crutches or take Vicodin.  Id.  On May 11, 2003, plaintiff reported a bout of edema from sleeping in a seated position on a bus for five days.  Tr. 167-69.  After the May 11, 2003 diagnosis of edema, plaintiff was told to return for treatment if the edema did not improve or if it worsened.  Tr. 168.  There is no indication in the record that plaintiff returned for treatment regarding that particular incidence of edema.  On March 3, 2004, a medical note provides that plaintiff complained about swelling in her right ankle and that she was positive for edema.  Tr. 256.  However, the record is unclear as to the medical provider's opinion regarding the severity of the edema or what, if any, treatment was prescribed.  Id.

In sum, to the extent that plaintiff was suffering from edema during any other time during the relevant period, the absence of treatment for edema conflicts with plaintiff's assertions of pain caused by the condition.  See Singh v. Apfel, 222 F.3d 448, 453 (8th Cir. 2000) ("[A] claimant's allegations of disabling pain may be discredited by evidence that the claimant has received minimal medical treatment and/or has taken only occasional pain medications."); see also Curran-Kicksey, 315 F.3d at 969 (finding that evidence that a party did not regularly require prescription medication or therapy could

"create reasonable doubt in a reasonable adjudicator's mind regarding to her testimony about the extent of her pain.") (citation omitted).

### 4.   Heel and Ankle Bone Spurs

The objective record is inconsistent with plaintiff's claims of disabling pain resulting from bone spurs in her heel and ankle.  An October 28, 2001 doctor's note stated that x-rays of plaintiff's right foot showed that plaintiff possibly had a small right spur in the calcaneal[6] area, but that it did not appear to be significant.  Tr. 282.  A September 13, 2003 note stated that plaintiff's ankles and feet were within normal limits. Tr. 220.  Further, an October 1, 2003 x-ray of plaintiff's right ankle showed that that the bony structures were intact and normal, with no evidence of any acute injury, fracture or deformity.  Tr. 227.  A subsequent March 4, 2004 x-ray noted that the right ankle was normal, but showed noted a calcaneal spur.  Tr. 250.  There is nothing in the record to indicate that any pain from the slight bone spur in her right heel significantly impeded her ability to stand or walk.  To the contrary, the multiple exam notes in the record ranging from 2002 to 2005 noted that her ability to walk, her gait, was normal and unassisted.  Tr. 204, 211, 295, 350.

### 5.   Arthritis

Plaintiff's claims of debilitating pain from arthritis in her back and hands (Tr. 387) also lacks support in the medical record.  There is a December 2001 treatment note stating that plaintiff had been seen for her refill of a prescription for her chronic arthritis. Tr. 186.  However, the medical record is silent as to where the arthritis was located.  On January 8, 2002, plaintiff was diagnosed with arthritis in her ankle.  Tr. 180.  However,

---

[6]     Calcaneus: "The largest of the tarsal bones; it forms the heel and articulates with the cuboid anteriorly and the talus above. Syn: os calcis, calcaneum, calcaneal bone, heel bone."  STEDMAN'S MEDICAL DICTIONARY (2000).

there is no mention of arthritis in her back or hands.   In addition, during a rheumatological evaluation of plaintiff on September 18, 2003, Dr. Gary Baker opined that there were no signs of systematic rheumatic disease.  Tr. 220.  Dr. Baker reiterated this opinion on February 3, 2005 when he stated, "it is <u>somewhat unlikely she has any type</u> of inflammatory arthritis based on exam. . . ."  Tr. 244 (emphasis added).  The record is void of medical evidence indicating that plaintiff is suffering from arthritis in her hands and back, which conflicts with her claims of arthritic pain in these areas.

In summary, although there is evidence in the records to support plaintiff's assertion that she is suffering from pain, plaintiffs' treatment and the objective medical findings in the record supports the ALJ's finding that plaintiff was not suffering from debilitating back pain, cyst pain, edema, bone spurs, or arthritis.

**B.   <u>Daily Activities</u>**

Although plaintiff does not need to establish that she is bedridden to be disabled, a claimant's credibility regarding subjective complaints of pain, fatigue, and depression can be undermined by daily activities.  <u>See</u> <u>Haley v. Massanari</u>, 258 F. 3d 742, 748 (8th Cir. 2001) (finding inconsistencies between subjective complaints of pain and daily living patterns where claimant could care for personal needs, wash dishes, change sheets, vacuum, wash cars, shop, cook, pay bills, drive, attend church, watch television, listen to the radio, visit friends and relatives, read and work on the construction of his home); <u>Haggard v. Apfel</u>, 175 F.3d 591, 594 (8th Cir. 1999) (finding that claimant's ability to cook some meals, water the flowers around his house, help his wife paint, watch television, go out for dinner, occasionally drive an automobile, and occasionally visit with friends, did not support a finding of total disability); <u>Pena v. Chater</u>, 76 F.3d 906, 908 (8th Cir. 1996) (concluding that the credibility of claimant's allegations of disabling

pain was undermined by his daily activities, including caring for children, driving, and occasional grocery shopping).

Here, plaintiff engaged in a wide array of activities during the timeframe in which she alleged she was suffering from disabling pain rendering plaintiff's complaint that her condition precluded her from engaging in substantial gainful employment less than credible.   The record shows that plaintiff was able to engage in a variety of activities throughout the period of time she claims to be disabled.  Plaintiff reported that every day she goes for a little walk or for a ride on the bus.  Tr. 109-10.  Plaintiff also reported that she is able to cook, clean, do house work, laundry, and go shopping.  Tr. 110.   In particular, she stated that she cooked, attempted to walk, and engaged in exercise activities several times a day; cleaned her house, watched television groomed herself, bathed, visited friends, and worked on puzzles on a daily basis; participated in organizations on a weekly basis; and shopped, played games, handled her finances, and went out to eat or to the movies on a monthly basis.  Tr. 112.  Plaintiff admitted that her impairment did not limit what she can do in terms of taking care of her residence. Tr. 110.  Further, she represented that, except for working, there were no activities that she could not do, had difficult performing, or required special help in order to perform. Tr. 113.

Additionally, one of plaintiff's friends, Mireya Perez, filled out a third-party function report on behalf of plaintiff.  Tr. 85.  Perez provided that plaintiff's disability did not affect plaintiff's ability to take care of herself, and that plaintiff is able to make daily meals, is able to perform household chores, goes out daily on her own, shops on a daily basis for one to two hours, is able to handle money, talks with others on a daily basis,

goes to church on a daily basis, can walk up to six blocks at a time (with a fifteen minute break in between), can follow instructions, and handle stress.  Tr. 86-91.

Further, plaintiff's credibility is undermined by her involvement as a caretaker for the apartment complex in which she lives.  Tr.  390.  A claimant's intention to work tends to prove that she is able to work.  See Naber v. Shalala, 22 F.3d 186, 188 (8th Cir. 1994).  Plaintiff testified during the hearing before the ALJ that she serves as a caretaker at a twenty-four unit apartment complex in exchange for rent abatement.  Tr. 390.  In this regard, plaintiff spends two days out of the week cleaning the apartment complex for approximately two hours during each of those two days.  Id. In addition, plaintiff rents and shows the apartments.  Tr. 391.  She also picks up trash outside the apartment complex and takes complaints from tenants.  Tr. 393.  Plaintiff's activities with regard to the apartment complex are admirable.  At the same time, they place the credibility of her subjective complaints of pain in doubt, and suggest that she was able, but lacked the motivation, to seek and maintain competitive level employment.  See Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001) (concluding that a poor work history may suggest a lack of motivation to work rather than an inability to work).

In conclusion, plaintiff engaged in a wide array of activities during the time frame in which she alleged she was suffering from disabling pain, rendering plaintiff's complaint that her condition precluded her from engaging in substantial gainful employment less than credible.  Thus, this Court concludes that the ALJ properly assessed plaintiff's RFC and her subjective testimony in light of the inconsistencies between the record and plaintiff's subjective complaints with regards to her claims of pain.  See Russell v. Sullivan, 950 F.2d 542, 545 (8th Cir. 1991) (finding that if the ALJ explicitly discredits the claimant 's testimony and gives a reasoned analysis, it is proper

to defer to the ALJ's determination).   Even if evidence exists to support the opposite conclusion, that is not enough to reverse the finding of the ALJ.  See Buckner, 213 F.3d at 1011; Mitchell, 25 F.3d at 714.

## VI.   LISTING DETERMINATION

Once it has been determined that a claimant has a severe impairment, step three of the sequential analysis requires the ALJ to consider whether the claimant is subject to any impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments in Appendix 1, Subpart P, Regulation No. 4.  Here, the ALJ concluded that the record did not establish that plaintiff is subject to any impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments in Appendix 1, Subpart P, Regulation No. 4.  Tr. 21.

"For a [plaintiff] to show that [his] impairment matches a listing, it must meet all of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis added); see also Marciniak v. Shalala, 49 F.3d 1350, 1353 (8th Cir. 1995) (citation omitted). If it is found that a plaintiff suffers from an impairment that is included in the listings she will be determined disabled without any other considerations.  See Braswell v. Heckler, 733 F.2d 531, 533 (8th Cir.1984).

Plaintiff claims that the ALJ's finding that she did not meet § 8.06 of the Listings for hidradenitis suppurativa is not supported by substantial evidence in the record.   In order to meet § 8.06 of the Listings, a claimant must have:

> Hidradenitis suppurativa, with extensive skin lesions involving both axillae, both inguinal[7] areas or the perineum[8]

---

[7]      Inguinal: "Relating to the groin."  STEDMAN'S MEDICAL DICTIONARY (2000).

[8]      Perineum: "The area between the thighs extending from the coccyx to the pubis and lying below the pelvic diaphragm."  STEDMAN'S MEDICAL DICTIONARY (2000).

that persist for at least 3 months despite continuing treatment as prescribed.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 8.06.

The first mention in the record of anything relating to hidradenitis suppurativa was on March 29, 1989, when plaintiff presented to HCMC with a painful cyst under her right arm.  Tr. 197.  The abscess[9] was drained of puss.  Id.  The records also indicate that a cyst was removed from plaintiff's right axillary area in 1991.  Tr. 200.  The next mention of such a condition was when plaintiff presented at HCMC on October 2, 2002 with the chief complaint of a lump under her right armpit.  Tr. 170.  The examining physician noted that the right axillary had many scars of healing and that the new lump was red and tender.  Id.  Plaintiff was told to return for treatment if the antibiotic had no effect or if she experienced worsening symptoms.  Id.  There is no indication in the record that plaintiff returned to receive additional medical treatment based on this abscess.  A doctor noted on September 18, 2003 that he observed chronic scarring from old sebaceous cyst activity in her left axillae sebaceous and that she was holding her right side due to a sebaceous cyst infection.  Tr. 220.

The next medical entry pertaining to hidradenitis suppurativa was a July 15, 2005 medical record from Skin Specialists,[10] which provided that cysts with scarring were observed in both axillae, breasts, perineum,[11] and the groin.  Tr. 347.  Plaintiff was diagnosed with hidradenitis suppurativa and given an antibiotic prescription of Levaquin.

---

[9]     Abscess: "A circumscribed collection of purulent exudate frequently associated with swelling and other signs of inflammation."  STEDMAN'S MEDICAL DICTIONARY (2000).

[10]     This diagnosis occurred after the June 28, 2005 hearing in front of the ALJ.

[11]     Perineum: "The external surface of the central tendon of the perineum, lying between the vulva and the anus in the female and the scrotum and the anus in the male." STEDMAN'S MEDICAL DICTIONARY (2000).

Id.  Subsequently, on July 29, 2005, plaintiff underwent a consultative examination by Dr. Asari, at the request of Minnesota Department of Jobs and Training, Disability Determination Services.   Tr. 348.   During Dr. Asari's examination of plaintiff, he observed scars of hidradenitis suppurativa in both axilla, the anterior abdominal wall, and the umbilicus.  Tr. 349.  Dr. Asari also noted two sites of folliculitis on the right breast.  Id.  Dr. Asari's provisional diagnosis of plaintiff included recurrent hidradenitis suppurativa.  Tr. 350.

There is no dispute that plaintiff has suffered in the past from hidradenitis suppurativa, as is evidenced from the scarring under her axillea.   Even the ALJ concluded that plaintiff was severely impaired by "old sebaceous cyst activity on the left axilla. . . ."  Tr. 20.  What is missing, however, in terms of meeting the Listing under § 8.06, is evidence that plaintiff suffered from hidradenitis suppurativa, with extensive skin lesions involving both axillae, both inguinal areas or the perineum persisting for at least 3 months despite continuing treatment as prescribed.

Rather, what the record shows is that plaintiff suffered from cyst activity from time-to-time in various parts of her body, including both armpits.  However, this Court cannot find anything in the record, nor has plaintiff pointed this Court to any evidence, indicating that this cyst or lump activity lasted for longer than three months.   For example, even though plaintiff was told by her medical provider to return if her October 2002 lump did not improve with antibiotics (Tr. 171), there is nothing in the record to indicate that she returned to the doctor seeking additional treatment, thereby dispelling any assertion that the lump activity lasted for longer than three months.

This Court further notes that plaintiff was diagnosed with hidradenitis suppurativa on July 15, 2005, which included cysts with scarring on both axillae, breasts,

periumbicular, and the groin.  Tr. 347.  Plaintiff was given an antibiotic prescription of Levaquin.  Id.  Only two weeks later, Dr. Asari only observed scarring of hidradenitis suppurativa, with active folliculitis[12] only occurring on her right breast.   Tr. 348-49. Again, the evidence in the record is that once plaintiff was treated for cyst activity, the condition was resolved in the axillae and groin regions.   As such, the substantial evidence in the record supports a finding that plaintiff is not suffering from hidradenitis suppurativa with extensive lesions lasting three months or longer under her armpits, between her legs or in her groin, as set forth in § 8.06 of the Listings.

Accordingly, there is substantial evidence in the record supporting the ALJ's conclusion that plaintiff is not suffering from any impairments, or combination of impairments that meets any of the listed impairments, and plaintiff's argument to the contrary, is rejected.

Plaintiff also contends that the ALJ erred by not calling a medical expert ("ME") to opine whether plaintiff equals the Listings for hidradenitis suppurativa given Dr. Asari's opinion that plaintiff has limitations as a result of hidradenitis suppurativa.  See Pl.'s Mem. at pp. 11-14.  This Court disagrees.  As a general rule, the Social Security regulations provide that ME opinions regarding the step-three determination are not essential.  For example, one regulation provides, "[a]dministrative law judges may also ask for and consider opinions from medical experts on . . . whether your impairment(s) equals the requirements of any impairment listed in appendix 1 to this subpart." 20 C.F.R. § 404.1527(f)(2)(iii) (emphasis added).  The use of the word "may" carries a connotation that the use of a ME to determine if a claimant meets or equals the listing

---

[12]     Folliculitis: "An inflammatory reaction in hair follicles; the lesions may be papules or pustules."  STEDMAN'S MEDICAL DICTIONARY (2000).

requirements is permissive and not mandatory.  See LeMay v. U.S. Postal Service, 450 F.3d 797, 799 (8th Cir. 2006) ("Certainly, as a general rule of statutory construction, "may" is permissive, whereas "shall" is mandatory.") (citations omitted).  Moreover, 20 C.F.R. § 416.927 explicitly provides that, "[a]lthough we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to subpart P of part 404 of this chapter, . . . the final responsibility for deciding these issues is reserved to the Commissioner."  20 C.F.R. § 416.927(e)(2); see also 20 C.F.R. § 404.1527(e)(2) ("Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to this subpart. . . .").

However, an ALJ must obtain an updated medical opinion from a medical expert under the following two circumstances:

> When no additional medical evidence is received, but in the opinion of the administrative law judge or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or

> * When additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

> When an updated medical judgment as to medical equivalence is required at the administrative law judge level in either of the circumstances above, the administrative law judge must call on a medical expert.

SSR 96-6p, 1996 WL 374180 at *3-4 (emphasis added).

In this case, the only circumstance that could arguably apply is the second situation when medical evidence that may in the opinion of the ALJ change the agency medical consultant's finding that the impairment is not equivalent in severity to any impairment in the Listing of Impairments.

On December 4, 2003 and January 22, 2004, state agency physicians determined that plaintiff could occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, stand or walk about 6 hours in an eight hour work day, and an unlimited ability to push or pull.  Tr. 231.  In addition, state agency physicians concluded that plaintiff had postural, manipulative, visual, communicative, and environmental limitations.  Tr. 232-34.  In July 2005, Dr. Asari issued his report regarding his consultative examination of plaintiff.  Tr. 348.  However, Dr. Asari's report did not suggest that plaintiff's impairments met, much less, equaled § 8.06 of the Listings.  To the contrary, on July 15, 2005, plaintiff was diagnosed with hidradenitis suppurativa which included cysts with scarring on the axillae, breasts, periumbicular, and the groin, and was given an antibiotic for treatment.  Tr. 347.  Two weeks later, Dr. Asari stated that he only observed scarring of hidradenitis suppurativa, with active folliculitis only occurring on her right breast.  Tr. 348-49.  In other words, the active hidradenitis suppurativa, save for that on her breast which is not covered by § 8.06 of the Listings, disappeared with treatment in less than three months.  As such, the ALJ was not required to obtain an updated opinion from a medical advisor given that there is nothing in Dr. Asari's report that could have lead the ALJ to conclude that it would have changed the state agency medical consultant's findings that plaintiff's condition did not equal any impairment in the Listing of Impairments.

Given the facts of this case, this Court finds that the ALJ did not error by not obtaining a medical expert to opine regarding whether plaintiff's impairment of equaled the Listings for hidradenitis suppurativa.

## VI.   VE TESTIMONY

Plaintiff claims that the ALJ failed to follow Social Security Ruling 00-4p by not establishing that the VE's testimony was consistent with the Dictionary of Occupational Titles ("DOT") and its companion publication the Selected Characteristics of Occupations ("SCO").   See Pl.'s Mem. at p. 16.   In particular, plaintiff contends that because the VE did not consult the SCO, the jobs provided to the ALJ by the VE were not supported by substantial evidence.   Id. at p. 17.   Plaintiff's argument is without merit. Plaintiff cites to no authority that states an ALJ must question the VE as to whether a discrepancy exists under both the DOT and the SCO.   Social Security Ruling 00-4p, makes clear that the SCO is a companion publication to the DOT.   It explicitly states that the "evidence provided by a VE . . . should be consistent with the occupational information supplied by the DOT."   SSR 00-4p, Policy Interpretation Ruling: Titles II And XVI: Use of Vocational Expert and Vocational Specialist Evidence, and other Reliable Occupational Information In Disability Decisions 2000 W L 1898704 at *2 (December 4, 2000).   If there is a conflict between the DOT and the VE's evidence, the ALJ "must elicit a reasonable explanation for the conflict before relying on the VE . . . ."   Id.

In this matter, the VE testified that given plaintiff's RFC she could work perform her past relevant work of assembly and hand packing and that even if she was unable to perform her past relevant work, she could perform jobs in the national economy as a personal care attendant, inspector, mail clerk/sorter.   Tr. 405-07.   While, the VE testified that she did not consult the SCO, when the ALJ asked the VE if her testimony was

consistent with the DOT, she replied, "[i]t is completely consistent with the DOT."  Tr. 411. Moreover, plaintiff did not identify a conflict at the time of the hearing with VE's testimony and the SCO, and similarly fails to do so now.  Tr. 407-11.  For all the above stated reasons, this Court finds that the ALJ's reliance in the VE's testimony was based on substantial evidence in the record.

### RECOMMENDATION

For the reasons set forth above, this Court finds that the decision by the ALJ to deny plaintiff disability benefits is supported by substantial evidence on the record as a whole.

THEREFORE, IT IS RECOMMENDED THAT:

1.      Plaintiff's Motion for Summary Judgment [Docket No. 12] be **DENIED**; and

2.      Defendant's Motion for Summary Judgment [Docket No. 15] be **GRANTED**.

Dated:      July 17, 2007

s/ *Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **August 3, 2007**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this Rules shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.